IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHEEM DAVIS, | : | No. 4:08-CV-2009 |
| Plaintiff, | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| WARDEN WILLIAMSON, *et. al*, | : | |
| Defendants | : | |

**<u>MEMORANDUM</u>**

January 20, 2009

This matter is before the Court upon two motions for reconsideration filed by plaintiff Raheem Davis.[1] (Docs. 17, 19.) For the reasons set forth below, both motions will be denied. This matter is also before the Court for screening of Davis's amended complaint. (Doc. 14.) For the reasons set forth below, the amended complaint will be dismissed.

**I.  BACKGROUND**

Davis, an inmate currently incarcerated at the Lewisburg United States Penitentiary ("USP-Lewisburg"), commenced this *pro se Bivens* action with the filing of a complaint on November 6, 2008. (Doc. 1.) Davis also filed an application to proceed *in forma pauperis* (Doc. 7) and a motion for appointment of

---

[1] The Court's prior orders in this case incorrectly referred to the plaintiff as "Raheen Davis." According to the plaintiff, the correct spelling of his first name is "Raheem."

counsel (Doc. 6). Davis's complaint asserted claims of violation of procedural and substantive due process, denial of access to the courts, deprivation of property, retaliation, use of excessive force, unconstitutional use of restraints, and cruel and unusual conditions of confinement. Named as defendants were Warden Williamson, Lieutenant Flemmings, and Lieutenant Hooper.

By order of December 1, 2008 order (Doc. 12), the Court granted Davis's motion to proceed *in forma pauperis*, denied his motion for appointment of counsel, and screened his complaint under 28 U.S.C. § 1915(e)(2)(B). The Court initially noted that all of Davis's claims would be dismissed because his complaint made clear that he had not exhausted his administrative remedies. (*Id.* at 7-10.) Next, the Court dismissed with prejudice Davis's claims against the defendants in their official capacities on the ground of sovereign immunity. (*Id.* at 10-11.) Next, the Court dismissed Davis's claims against Williamson for failure to allege this defendant's personal involvement in any constitutional violation. (*Id.* at 12.) The Court also dismissed with prejudice Davis's claims regarding procedural and substantive due process, deprivation of property, retaliation, use of excessive force, use of restraints, and cruel and unusual conditions of confinement for failure to state a claim upon which relief may be granted. (*Id.* at 12-15, 18-25.) Finally, the Court dismissed without prejudice Davis's claim regarding denial of access to the

courts and granted Davis thirty days in which to file an amended complaint as to this claim. (*Id.* at 16-18, 29.)

Before a copy of the Court's December 1, 2008 could reach Davis, he submitted another motion for appointment of counsel (Doc. 13) and an amended complaint (Doc. 14), which re-asserted many of the claims from his original complaint that had already been dismissed. By orders of December 5, 2008, the Court again denied Davis's request for counsel (Doc. 15) and dismissed Davis's amended complaint without prejudice and with instructions that Davis should file an amended complaint in accordance with the Court's December 1, 2008 order (Doc. 16).

On December 9, 2008, Davis filed a "Memorandum and Opposition of Judge John E. Jones III Memorandum and Order" (Doc. 17), which seeks reconsideration of the Court's December 1, 2008 order screening his original complaint.

On December 23, 2008, Davis filed a letter with the Court again asking the Court to reconsider its December 1, 2008 order. (Doc. 18.) Davis also indicated that, rather than comply with that order and the order of December 5, 2008, both of which instructed him to file an amended complaint, he intends to stand on his already-filed amended complaint (Doc. 14). Finally, Davis also indicated that he

was still moving through the Bureau of Prisons ("BOP") administrative remedy process.

On January 6, 2008, Davis filed another letter with the Court (Doc. 19) generally complaining of difficulties in litigating this action from prison and asking the Court to reconsider its order denying his request for appointment of counsel.

## II.  DISCUSSION

### A.  Motions for Reconsideration

The Court will first address Davis's motions for reconsideration of the December 1, 2008 order screening his original complaint and denying his motion for counsel.  The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence."  *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)).  Such a motion may be granted only if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Id.* (citing *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  "Reconsideration of

judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly." *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002).

Davis's motions for reconsideration do not present any change in the controlling law, new evidence, or clear error, and therefore, will be denied. Nevertheless, the Court will briefly address the arguments raised in the motions.

Davis first notes that his *pro se* submissions should be liberally construed and generally argues that there is no heightened pleading standard for civil rights claims. Davis's original complaint was screened under the appropriate liberal pleading standard, but failed to state a claim upon which relief may be granted.

Next, Davis argues that the Court incorrectly concluded that the defendants are entitled to sovereign immunity. In making this argument incorrectly equates sovereign immunity and qualified immunity. Sovereign immunity is the doctrine that precludes the filing of a suit against the sovereign (in this case, the federal government) without its consent. Filing suit against government officials (in this case, the USP-Lewisburg and USP-Canaan defendants) in their official capacities

is the same as suing the government itself. Thus, in this case, Davis's claim against the defendants in their official capacities must be treated the same as a suit against the federal government itself, and the Court has no jurisdiction over such claims. Sovereign immunity, however, precludes only Davis's claims against the defendants in their official capacities, not his claims against the defendants in their individual capacities. No defendant has raised, and the Court has not addressed, a qualified immunity defense, which is an entirely different concept.

Davis next reiterates the allegations of his complaint regarding his claims of excessive use of force and restraints. This argument presents nothing beyond the original complaint, and therefore, does not alter the Court's prior conclusion.

Davis then attempts to demonstrate the personal involvement of each defendant. The Court's order, however, dismissed only the claims against Warden Williamson for failure to allege personal involvement. Davis's arguments regarding Warden Williamson's personal involvement amount to the allegation that Warden Williamson must have known of the purported constitutional violations because he was in charge and because Davis filed grievances. These conclusory allegations reveal no error in the Court's decision.

As to his procedural due process claim arising from his placement in the SHU or on ADX status, Davis merely states that "ADX status speak[s] for itself."

As the Court discussed in its December 1, 2008 order, however, Davis's placement in restricted housing, does not raise an atypical deprivation that triggers due process protection, and Davis has presented nothing to alter this conclusion.

As to his access to the courts claim, Davis generally complains of the difficulties litigating this case and that he was not able to confer with his attorney to the extent he would like regarding appeals in his criminal cases. However, as the Court explained in its December 1, 2008 order, merely claiming difficulties in litigating a case is not enough to state a claim for denial of access to the courts. Davis still has not explained the non-frivolous, arguable claims which are being detrimentally effected by his alleged lack of access to the courts, and therefore, has not stated a claim upon which relief may be granted.

Finally, Davis has presented no grounds for the Court to reconsider its decision denying his request for counsel. As to the threshold issue, Davis's claims still appear to facially lack merit. Moreover, Davis's submissions, containing relatively cogent legal argument and numerous citations to relevant case law and procedural rules, demonstrate that he is quite able to adequately present his own case. For these reasons, Davis's motions for reconsideration will be denied.

**B.    Amended Complaint**

Davis has affirmatively indicated that, rather than file an amended complaint as directed by the Court's orders of December 1 and 5, 2008, he chooses to stand on the amended complaint which he has already filed. The Court will therefore deem Davis's amended complaint the operative pleading in this action and screen the amended complaint under 28 U.S.C. § 1915(e).

### 1. Allegations of the Amended Complaint

Davis first alleges that on August 5, 2008, Warden Lindsey, who is not named as a defendant, ordered several correctional officers, who are also not named as defendants, to transfer him from MDC-Brooklyn[2] to USP-Lewisburg. (Amend. Compl., Doc. 14, ¶ VI(1).) Davis states that during his transfer one of the officers called R&D[3] Officer Singe and told him that Davis had assaulted an officer and "to fix him up." (*Id.*) Davis complains that his transfer was ordered without him "being designated or classified by the designation and classification center in Grand Pierrie [sic] Texas." (*Id.*) Davis also complains that upon arrival at USP-Lewisburg, his property was taken from him by an unnamed R&D officer. (*Id.* at VI(2).)

---

[2] MDC-Brooklyn is the Metropolitan Detention Center in Brooklyn, New York, a federal administrative facility.

[3] The Court assumes that by "R&D" Davis means receiving and discharge. *See Chisolm v. McManimon*, 275 F.3d 315, 318 (3d Cir. 2001).

Davis next alleges that on August 9, 2008, he was "assaulted on a [sic] illegal use of force order by 5 unknown officers authorized by Captain Passaniti and Lt. Flemmings." (*Id.* at VI(3).) Davis states that he was assaulted "for not being able to cuff up from behind with one set of cuffs" because of a prior injury. (*Id.*) Davis states that he was "dragged from the shower area to his cell by his handcuffs and leg shackles, and placed in full restraints [in] his cell with just a mattress for over 24 hours."[4] (*Id.*)  He also states that Lt. Flemmings made several verbal threats to him.  (*Id.*)

Davis next alleges that on August 14, 2008 he was transferred to USP-Canaan where he was "deprived of his legal property, legal calls, a pen to have in his cell, legal material, adequate access to the law library, visits, and liberty (population)." (*Id.* at ¶ VI(4).)  Davis alleges that on October 22, 2008, he was

---

[4] Davis's amended complaint conveniently omits some of the potentially damning details of this incident which were included in his original complaint.  In his initial complaint, Davis stated that when he was ordered to cuff up by a correctional officer he refused and demanded to speak to a supervisor.  Lt. Flemmings then intervened, stated that he would not authorize use of two sets of handcuffs, and told Davis that if he refused to be handcuffed, use of force would be authorized.  Davis again refused to be handcuffed and was then dragged out of the shower area by his leg and hand restraints.  (*See* Compl., Doc. 1, ¶ V(4).)  Davis is bound by the admissions made in his original complaint and cannot simply erase these details by omitting them from his amended complaint. *See, e.g.*, *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir.1998), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *In re LG Phillips Displays USA, Inc.*, 395 B.R. 864, 869 (D. Del. Bankr. 2008); *In re FleetBoston Fin. Corp. Sec. Litig.*, 2007 WL 4225832, at *29 (D.N.J. Nov. 28, 2007); *In re Enron Corp.*, 370 B.R. 583, 597-98 (S.D.N.Y. Bankr. 2007).

transferred back to USP-Lewisburg and placed on ADX status in violation of due process. (*Id.* at ¶ VI(5).)

Davis next alleges that on October 30, 2008 he was placed in a dry cell by Lt. Hooper. (*Id.* at ¶ VI(6).) He states that he was "forced to eat and sleep in feces and urine (by not having manual water to flush his toilet or drink)"[5]; that "the heat was up to $100^0$ F"; and that he "was deprive[d] of everything except food, clothing, and shelter." (*Id.*) Davis was removed from the dry cell on November 6, 2008, but complains that he was the cell to which he was moved had been vacated by an inmate who had scabies and that he was denied cleaning supplies to sterilize the cell. (*Id.* at ¶ VI(7).)

Davis next alleges that on September 15, 2008, Officer Crawford conducted an "illegal search" of his cell and "stole" legal documents, commissary items, stamps, legal books, and pictures of his girlfriend in lingerie. (*Id.* at ¶ VI(8).)

Davis also alleges that he was deprived of his legal property from August 5, 2008 (the day he was transferred to USP-Lewisburg) to November 6, 2008 (the day he was released from the dry cell). (*Id.* at ¶ VI(10).) Davis also alleges that the

---

[5] Davis further explained in his original complaint that if he wanted to flush the toilet or run water, he had to ask a correctional officer. (Compl. ¶ V(6).)

10

fact that he can have only one foot of legal paperwork in his cell deprives him of substantive due process and access to the courts. (*Id.* at ¶ VI(14).)

Finally, Davis alleges that he has been subject to confinement in the SHU in violation of procedural and substantive due process since a January 11, 2008 "incident."[6] (*Id.* at ¶ VI(11).) Davis also claims that placing him on holdover status violates his First, Fifth, Sixth, and Eighth Amendment rights. (*Id.* at ¶ VI(13).)

Davis names as defendants in his amended complaint Warden B.A. Bledsoe, the warden of USP-Lewisburg; Warden Ronnie Holt, the warden of USP-Canaan; and Captain Frank Passantiti, Lieutenant Flemmings, Lieutenant Hooper, and Officer Crawford, all corrections officers at USP-Lewisburg. (*Id.* at ¶ III.) Davis sues all defendants in both their official and individual capacities. Davis summarizes his claims against these defendants as violations of procedural due process, cruel and unusual conditions of confinement, denial of access to the courts, use of excessive force, and intentional infliction of emotional distress. (*Id.* at ¶ IV.) Given the frequency with which the term appears in his amended complaint, the Court will also construe Davis's submission as attempting to state a

---

[6] This "incident" was Davis's attempting to murder a corrections officer at the Metropolitan Correctional Center in New York, New York by repeatedly stabbing him in the head and neck with a shank. *See United States v. Davis*, 08-cr-67 (S.D.N.Y.); *see also* Compl. ¶ V(1).

substantive due process claim.  As relief, Davis demands $250,000 in compensatory damages and $250,000 in punitive damages.  (*Id.* at ¶ VIII.)

### 2. Standard of Review

Title 28 U.S.C. § 1915(e)(2)(B) states that where a plaintiff is granted permission to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  In determining whether a complaint fails to state a claim for purposes of § 1915(e)(2)(B)(ii), a court applies the same standard as that used when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).  "However, a court need not credit either 'bald assertions' or 'legal

conclusions' in a complaint when deciding a motion to dismiss." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

### 3. Screening of Davis's Claims

As an initial matter, Davis's procedural and substantive due process, excessive use of force, and Eighth Amendment conditions of confinement claims were dismissed with prejudice by the Court's December 1, 2008 order. Davis's amended complaint reiterates these claims essentially without change. Davis is precluded from relitigating these claims, and therefore, they will, again, be dismissed with prejudice. *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").[7]

Next, as was the case with his original complaint, the claims asserted by Davis in his amended complaint against the defendants in their official capacities are subject to dismissal under the doctrine of sovereign immunity. Davis's claims against these defendants in their official capacities are treated as claims against the

---

[7] The only plausible difference in Davis's amended claims is that he now asserts that his holdover status violates his constitutional rights. However, courts have consistently held that placing an inmate in administrative detention pending transfer to another institution does not trigger due process protections. *See, e.g.*, *Jordan v. Fed. Bureau of Prisons*, 191 Fed. Appx. 639 (10th Cir. 2006); *Malik v. Kindt*, 76 F.3d 393 (Table) (10th Cir. 1996); *Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991).

United States, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and *Bivens* claims against the United States are barred by sovereign immunity, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). All claims against the defendants in their official capacities will be dismissed.

As was the case with defendant Warden Williamson in Davis's original complaint, the claims asserted by Davis in his amended complaint against Warden Bledsoe and Warden Holt are subject to dismissal for failure to allege their personal involvement in any purported constitutional violation. *See Evancho*, 423 F.3d at 353. Neither of these defendants are mentioned in the substantive paragraphs of Davis's complaint, and it is clear that they are named as defendants only because they are the wardens of the two facilities where Davis has been confined. All claims against these defendants will be dismissed.

The Court's December 1, 2008 order dismissed without prejudice Davis's claim regarding denial of access to the courts and granted him leave to file an amended complaint as to that claim. The Court instructed Davis that he must specify the nonfrivolous, arguable claim that was negatively affected by the alleged denial of legal materials and explain how this purported lack of access deprived him of a remedy that is no longer available in his underlying suit. *See Christopher*

*v. Harbury*, 536 U.S. 403, 415-16 (2002). Davis's amended complaint, however, contains the same defects as his original complaint: Davis does not identify the nonfrivolous, arguable underlying claim compromised by the alleged denial of access or any remedy that is no longer available to him. Because Davis has not followed the Court's instructions, but instead chosen to stand on his defective denial of access claim, this claim will also be dismissed with prejudice.

Finally, Davis's amended complaint attempts to add a claim for intentional infliction of emotional distress arising out of his other alleged constitutional deprivations. Under Pennsylvania law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46(1) (1965)). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* at 754 (citations omitted). "[I]t is for the

court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 625 A.2d 668, 671-72 (Pa. Super. Ct. 1993). In this case, the factual allegations of the complaint, especially when considered in the context of the prison environment to which Davis has subjected himself, do not constitute the type of extreme and outrageous conduct that would give rise to a claim for intentional infliction of emotional distress. *See, e.g.*, *Hoy*, 720 A.2d at 754 (collecting cases); *Johnson*, 625 A.2d at 672 (priest's sexual abuse of alter boy); *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989) (defendant deliberately vented highly radioactive steam on plaintiff and attempted to conceal overexposure to radiation). Davis's intentional infliction of emotional distress will be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Davis's motions for reconsideration will be denied and his amended complaint will be dismissed. Davis has already been granted leave to amend his complaint to address the deficiencies therein, but has chosen not to take advantage of that opportunity, and so dismissal will be with prejudice. An appropriate order will be entered.